Good morning all. We will have three cases this morning, and we will start with Washington v. Gilmore, 23-2963. Mr. Kowalczyk. Good morning, Your Honor. May it please the court, my name is Anthony Kowalczyk. I'm a Deputy Attorney General for the Commonwealth of Pennsylvania. I have the privilege of representing the appellant in this case, Appellant T.S. Oswald. And the first thing I want to say is I did receive your letter that the argument is limited to the damages issue, but I do want to remind the court that we did appeal the underlying verdict in the underlying decision, and that is before you, and we are asking the court to reverse the district court's judgment as to liability. Doing so would render consideration of these other issues we're arguing today unnecessary. In order to get to the points that you appear to be interested in, I'm going to go to the second letter that you sent, the issue of aggregation versus claim by claim. And I think it's pretty clear that under the facts of this case, we could easily be talking about the facts of these cases. The first incident allegedly occurred on August 1st, 2013. The second one was April 2nd, 2015. Each one was an independently actionable, and I'm going to say alleged because the liability is on appeal, alleged constitutional violations, Eighth Amendment violations, as articulated in this court's 2018 decision, Ricks versus Shover. And we're dealing with two completely separate incidents. Why shouldn't we treat these as related or intertwined? We've got the same parties involved. It looks like a course of conduct, at least the way it was found. It's the same claim. It's not like some other cases you pointed to where it ends up there are two different causes of action. And when we looked in particular to the second of the jury's, the punitive damages awards, that disparity between the punitives for the first and second would seem to suggest that the jury too is looking at this as a course of conduct. In seeing a pattern and explaining the 200 rather than 25 in terms of punitives. Well, I think there are two points I want to make in response to that question. The first is, in terms of, you know, not aggregating versus treating them as discrete incidents, I guess the best analogy I can think of is Amtrak v. Morgan. When the Supreme Court announced the standard for Title VII cases, you have discrete acts that are immediately actionable, and you have to file an EEOC charge within the 180-day or 300-day period. And then you have hostile work environment claims based on a continuing conduct. That's a timeliness case about when you have a complete wrongs that you can sue on. But the analysis here is about the reprehensibility of the wrongs. So, you handle civil cases. But when people represent the commonwealth in criminal cases, they come before us and say, this crime was worse because this was a three-time loser. Because this person did it again and again and should have known and showed himself to be worse by repeating the crime. We have the same wrongdoer. We have the same wrong. And the jury seems to think the second wrong is worse than the first because it wasn't a one-time lapse of judgment, but he recidivated. So, timeliness doesn't seem like the right analogy. Criminal wrongdoing seems like a closer analogy to me. Why am I wrong about that? Why should we be looking at Morgan and this Title VII timeliness analogy? Well, I think because, first of all, the more untethered the damage as a word gets from the action, the more... This is probably not a good case to use the word tether. Well, unmoored, I guess, is probably the term. I think you understand what I mean. But the more, if it becomes unmoored from the specific incidents that it's based on... But my point is we treat the second wrong as a worse wrong in light of the decision to do it again. So, I don't think it's untethered. The person who does it a second time is a different person with different knowledge and different experience from when he did it the first time. Well, I think if you were... Here we have a lapse of almost two years. We have 20 months. Okay. Okay. You could easily be talking about two completely separate cases here. When we have a criminal recidivist, we don't say, oh, that burglary was two years ago. We say, he committed a burglary two years ago and it wasn't a one-time lapse of judgment. He went and did it again. Why doesn't that reasoning apply here? In this particular instance? Well, actually, there are two reasons. One is, first of all, what we're dealing with here is a punitive damage award that was specifically awarded for a specific act. And Judge Bassoon's, you know, the sheets that she gave the jury had the specific counts separated. And the other thing is that the Supreme Court has made clear in State Farm, for instance, that you have to judge the constitutionality of the punitive damage award by reference to the harm that it actually caused. And the jury specifically said each one caused $20,000 in compensatory damages. Now, there's an important point I do want to make. That's compensatory, but I mean, what about when you're talking about punitives, what about reprehensibility? It really does come down to that. And also, you know, you shouldn't go beyond... What was it? Was it 10 to 1? Well, 10 to 1 was on the second award. The first one was $25,000 to $20,000. Yeah. With 10 to 1, the Supreme Court actually said that anything exceeding a single-digit factor was presumptively unconstitutional. But that means there's a presumption, but also it notes in the court's opinion that the degree of harm or reprehensibility can affect that number. So it's not magic. It's not magic, but the important thing that I think you need to keep in mind here is that, first of all, with respect to reprehensibility, we're dealing with a spectrum, okay? Any sexual assault is reprehensible by definition, I would say, almost. Ricks v. Shover, I think, recognized that in holding that the Eighth Amendment renders those types of claims actionable. But what we're dealing with here is a situation where we have a specific numerical amount set as to the damages. So every sexual assault can't result in exponential liability, because that would make the whole... To say that those aren't related, or that when we're looking at the harm, that you can assess the harm in the second situation completely separate and apart from the first, doesn't really make sense, does it? I mean, the victim has experienced something now twice, which is far more egregious, especially with this type of conduct. And now the victim fears that the perpetrator has it out for him, is stalking him, it might happen again. So there are ways in which the second harm leaves a more lasting impact. Well, I think that if that were the case, if there were more harm caused by the second one, the jury's verdict may have reflected that, and it didn't. We have $20,000 for each. But it did in the punitive damages award. But it's the series, it's the pattern of the two of them together, that when you think about the relationship of that award to the harm that was inflicted, it seems like those harms from the two incidents are hard to separate out as two discrete, isolated events, the way you're asking us to do. Well, I think they are discrete incidents, because they're individually actionable. But the important point I wanted to make, the second point I wanted to make in follow-up to your question, is even if you aggregate them, you're still looking, and I believe it's a 5.6 to 1 ratio, and that would be presumptively unlawful under federal common law. To what extent does it, in this case, matter whether we aggregate or not? It will change the ratio, there's no doubt about that. But everything else will remain the same, including whatever the perception is of reprehensibility by the jury. Well, I think if you do aggregate the claims, and you come up with, and it's the 5.6 to 1 ratio, the overall award would still be unlawful, because this case is not governed by Browning-Ferris. Because? Because you have a 5.6 to 1 ratio if you were to aggregate the claims, and the Exxon shipping decision. As an admiralty case. Traditionally, common law was one thing, equity was another, admiralty is another. So how do you take that admiralty rule and say that that applies to common law, especially since this is not straight common law? But why should we read it beyond that context? Well, first of all, Besista versus Ware, this court specifically identified federal common law as the source of the authority for a Section 1983 plaintiff to procure an award of punitive damages. And then in the Bayside prison decision, which I mean, I acknowledge it was unpublished, but in the Bayside case, this court specifically vacated a $200,000 punitive damage award in a case in which the compensatories were $45,000 and remanded. And Judge Garth, who was on the panel, specifically stated, took the position in that case that the ratio could not exceed one to one. And that was a Section 1983 case. So, I mean. Neither of those cases address this situation. Neither one laid down a rule. Why should we adopt such a rule, such a broad rule that, you know, in admiralty, the courts have broad power. OK, but there's no general federal common law. Why should we treat this as an area for us to do some lawmaking? There's no general federal common law, but there is federal common law, as announced in Smith versus Wade, which establishes, 1983 U.S. Supreme Court, establishes what you need to get punitive damages in a Section 1983 case. In Basista, this court specifically recognized that punitive damages awards can't vary from state to state in Section 1983 cases, because that would undermine the uniformity that Congress intended to create when it enacted Section 1983. OK, so for law purposes, we apply federal law, but it doesn't then follow that there's a federal common law limit from Exxon that reaches here. But the principles that were articulated in Exxon are similar to those that were articulated in Smith versus Wade. And when you apply those principles, and I see that I'm out of time. I don't. I'm sorry. Finish your explanation. OK. Essentially, when you look at what the Supreme Court looked at in Exxon, they looked to state laws that said, OK, we can have some states, you know, there are no punitive damages. I believe there was one state where there wasn't. I think it was Nebraska, but I'm not sure on that one. And then there were other states where they allowed triple, and then other states where they allowed quadruple or double. And the Supreme Court used those as guideposts to establish when, where the line is. And then they said in Admiralty, one-to-one in the Exxon Valdez case was appropriate. But even if you are not in Admiralty and you're not in that context, you're still not going to get over like a four-to-one ratio under federal common law if you apply the reasoning that they applied. Mr. Kowalczyk, did you reserve any time for rebuttal? Three minutes, Your Honor. That's granted. Mr. Weiss. Good morning, Your Honors, and may it please the Court. My name is Samuel Weiss for Mr. Henry Washington. I'm happy to start with talking about Bazista and Bayside, this sort of federal common law issue. So Bazista is a case from this Court that's 60 years old. It doesn't announce any cap on federal common law, or pardon me, any cap on punitive damages from federal common law. It just says that we would look to federal common law. I think that's just per Judge Bevis' question. This is just an outdated mode of how we think about statutory interpretation. We don't think of it now as pulling from a federal common law of damages, but instead it would require some sort of analysis of Section 1983. If there were limits at the time that Section 1983 was enacted around 1871, then shouldn't that inform the way we apply 1983? Absolutely. Okay. It's just I don't know the answer to that question because defendants never raised it. Okay, so you believe it's forfeited here, but it's quite a viable legal theory in general. I absolutely think it's possible, but it would be a matter of statutory interpretation and not federal common law. And I would point this Court to the Seventh Circuit's decision in Coons v. De Felice, which is defendants made basically the identical argument, and the judge of the Seventh Circuit responded by saying, there is no such thing as an overhanging federal common law of damages. You need to make a statutory argument based on 1983. Defendants have not made a statutory argument based on 1983, and therefore that argument is forfeited. So I think that maps onto here perfectly. To look at Bayside, so Exxon has been cited by this Court in the punitive damages context twice in the 16 years since it's been published. They were both in roughly the following year, and one of them is a prison case. It's Henry Bayside Prison Litigation. That had a 4.5 to 1 ratio where this Court in footnote 11, a single judge said it would extend, it found Exxon persuasive and would extend the rule to constitutional punitive damages and create a 1 to 1 rule. So that obviously is not binding on this Court because it was seeking to create new law and it was one judge. Can I just go back to De Felice for a second? What do you think De Felice holds? I think De Felice holds that I think most straightforwardly it's just a forfeiture case about defendants cannot point to Exxon in a Section 1983 case and say there's some broad federal common law protections to punitive damages under 1983. I thought your brief argued that federal common law does not apply. Yes, Your Honor, I... But does Kuntz really say that? I thought Kuntz said that, quote, inevitably our resolution of cases or controversies requires us to choose interstices in federal law from time to time. So if there's a gap, there's a silence there. And Exxon Valdez or the Exxon case may not be the answer, but you hear we're filling in the gaps of a statute, and so our common law rulemaking ought not to be so limited, should it? I think that's possible, Your Honor. I think... I mean, 1983 sounds in tort. Right. I think like with the immunities in 1983, we now, and I apologize if I'm speaking past you, but that we would view that now as, per Judge Bevis' question, a statutory interpretation question of exactly which limitations on remedies were enacted by Congress when they enacted 1983 as opposed to drawing from a federal common law of damages. So what would you say is the outer limit, then? Well, the outer limit, it seems there's no authority in this Court, defended at some point to any others, that there's some sort of limit within 1983 that... But what would you suggest? Would it be the constitutional limit? Well, as the Supreme Court has repeated a number of times, it's supposed to be very flexible. I think, as you pointed out to my friend on the other side, reprehensibility is the most important factor, not the ratio. I mean, it seems like if you look at State Farm, it talks about a few awards exceeding a single-digit ratio. They would seem to be rare, but punitive and compensatory damages to a significant degree fit that, and it will depend on the degree of harm. So aren't we back full circle to where Judge Beebe has started us here on reprehensibility? I completely agree, Your Honor. And just to perhaps slightly rephrase your question, because this came up, my friend on the other side talked about this as a presumption in State Farm of anything above a single-digit ratio. What State Farm held was, in the statement that he's citing, was that there should be no bright-line ratio. However, following the principles of State Farm, few cases will exceed a single-digit ratio by a significant degree. So 5.6 to 1 is a single-digit ratio, even 10 to 1. And I don't mean this to be too clever, but that does not exceed a single-digit ratio by a significant degree. It exceeds it by a penny. But either way, I think to your question, Judge Ambrose, the real question is reprehensibility and not a myopic focus on ratio. Mr. Weiss, before we leave common law, even with forfeiture, that's something we could excuse. And there's important reasons to do it. And I wonder what your response is to concerns about constitutional avoidance, if we can look to a common law ceiling that is something lower than the constitutional one. Yes, Your Honor. Well, I think constitutional avoidance wouldn't come into play because I think this damages award is constitutionally valid. Is there a reason for us to be excusing forfeiture for that reason? A common law limit instead of the constitutional one that has been argued? Yeah, I would say in certain circumstances that would be true. The reason I think that that's not true here is because defendants haven't identified courts finding that kind of common law limit in Section 1983. There are a lot of 1983 cases. A lot of them seek punitive damages. This court has never taken Exxon to stand for any principle that 1983 draws on some federal common law limit that's below the constitutional limit. Exxon itself doesn't stand for that principle. And so I think to excuse forfeiture on an issue where defendants just don't seem to point to any authority, they're arguing for quite a significant expansion in the law. And so being that the proper methodology of asking for that is unbriefed, we think this court would be wise to, if not outright reject it, just to leave it alone. Can I ask you to address whether we should look at this in the aggregate or, in other words, so intertwined that we have to look at it in the aggregate or case by case, incident by incident? Yes, Your Honor. So this court has, in our supplemental brief, we cited a 2660 Woodley Road joint venture, which did look at, which is the one published opinion we could find, where this court either aggregated or went claim by claim in punitive damages. And we found that it did go by aggregate, including state and federal claims, common law and statutory claims. So we think this court should follow that precedent. But it doesn't provide anything else. If it's incident by incident, one is, you know, one to one. The first incident of 2013, the 2015 incident is ten to one. So do you really care what the arithmetic is? I think the arithmetic isn't very important, actually. So I think the reason that it makes sense to aggregate, and, again, this court has aggregated in the past in a binding opinion. We argue it should do so again. But what that language from State Farm and other Supreme Court cases represent is that this is meant to be a really flexible endeavor. And so courts, pardon me, juries are allowed to look at a wide variety of information, including things like potential harm that wasn't actually realized or the net worth of defendants. And so imposing a kind of formalism where you go incident by incident, even though, you know, near identical facts, identical defendant, we think is taking what the Supreme Court has insisted must be a really flexible standard and imposing a formalism on it that's inappropriate. Not a flexible standard, but what is the standard that you would suggest that we adopt? Oh, I think in, I don't think this court even needs to go as far as 2660 joint ventures or 2660 Woodley Road joint ventures. My question is when do you think we should look at incident by incident or when should we look to the aggregate? Your Honor, I think you should look to the aggregate full stop. But I think. Because? Because the Supreme Court has said that juries can look at a wide variety of information, including information that wasn't even actionable to effectively convey the goals of penal defense. I hear where there was a 20, 21 month gap. There was a 20 to 21 month gap. That's true. They hypothetically could have been two separate claims, although they weren't. So they were distinguishable. But again, I think that imposes a kind of legal formalism when the Supreme Court has said, well, sometimes the constitutional ratio is one to one. In TXO Products Corporation, the Supreme Court affirmed a ratio of 526 to one. That's because juries can look at a wide variety of information and should consider a wide variety of information. And imposing, it's trying to make sort of a mathematical formula out of something that's just not conducive to that. When I look at this, I'm trying to put myself in the head of the jury. And I think my two colleagues kind of put their finger on it. Okay, the first one, reprehensible, shouldn't do it one to one. But doggone it, you do it a second time. And you do essentially the same thing with the same kind of malice and intent. We're going to hit you hard this time. That makes the second one, even if it's incident by incident, and it seems like it's incident by incident the way they went about it, I would guess in this case, that, okay, we're going to throw the book at the sky. We'll go up to what we think is the max. That's my inference, too. But that's incident by incident. So that's incident by incident, and I think that that would be totally legitimate. The key factor here is reprehensibility and not ratio. It doesn't exceed, the ten to one would not exceed single digit ratio by a significant degree, which is what State Farm said would be the rare case. I would also say I think this is the rare case. To get back to reprehensibility, reprehensibility is the key factor, not the ratio. Mr. Weiss, does it matter that we have here the special verdict? We have the jury having articulated its own sense of what the ratio should be, if you will. Does that favor treating them as separate incidents? And I understand you have the argument that ten to one is perfectly fine. But assume for these purposes, if we don't accept that, and the question is whether to aggregate or not, how should we consider the fact that the jury returned these separate punitives and already told us what they think the proper ratio is? Right, Your Honor. So that, of course, wasn't the jury's decision, right? The verdict form was developed by the parties, although with a pro se plaintiff and the court. So they did draw those distinctions between compensatory and punitives for the specific claims. Again, I think it was legitimate for them to do so. However, I think in thinking about constitutional limits, again, the Supreme Court has instructed for that to be very contextual, very flexible. So the verdict form is the only thing that even allows us to make this, have this discussion, right? Because if it only had one line item, and again, this is not up to the jury, and they said 40,000 to 125,000, it would just be settled that we're 5.6 to 1. But despite the fact that that was the jury verdict form that the jury had, we still think that reviewing the punitives award in a way that actually looks at a full context is more consistent with the Supreme Court's precedent. You talked about flexibility in a full context, but it can't be standard less, right? So how would you circumscribe the concept of relatedness that would allow for aggregation? How would you define what that is? Well, I think either the Eighth Circuit case, the defendants might say if there's a distinct legal harm. I'm actually not sure how compelling that is. Certainly when there's different defendants, that's compelling, right? So, although again, this court in 2660, with the exception of defendants, which I obviously think makes perfect sense, really did just put it all together and aggregate it all, and I think that that would be perfectly legitimate. If we needed to circumscribe it additionally, I think even the cases cited, like the Eighth Circuit case cited by defendants that said we're going to go claim by claim, they said, well, this is because there are distinct legal injuries. There aren't distinct legal injuries here. And so we think there's no justification for going claim by claim. Okay. Thank you, Your Honors. Thank you. Thank you, Your Honor. Do you want to address the forfeiture point? I do, actually, yes. There's been no forfeiture, okay? There's no forfeiture to excuse. The terminology that was used, federal common law, exactly mirrors what this court said in Basista v. Ware in 1965, and it also mirrors what this court did in the Bayside case, in which Judge Garth specifically relied on Exxon, a shipping company, to say that the ratio couldn't be more than one to one. So maybe that keeps an Exxon claim in here, but the Seventh Circuit, Judge Wood and Coons v. DeFelice said, we do not sit, as the Exxon courts did, as a common law court of last review. Instead, we must respect the limitations Congress built into the statute. And so your claim is just that this admiralty rule is in this common law case, right? It's not, you have not made a statutory argument about 1983. Section 19, well, because of the, this is a 1983 case, so raising the argument that federal common law limits the amount of punitives is necessarily arguing that under Section 19. Not arguing it's a matter of statutory construction or the law in 1871. You've argued it as Exxon means we should craft something like what Judge Garth was envisioning. And that's exactly what this, this court specifically looked to federal common law in Vecista v. Ware and used that exact terminology. And when the Supreme Court in Smith v. Wade held that the- But Smith has nothing to do with this case. Okay. Well, okay, but the court looked to federal common law to, in Carey v. Pifus, for instance, in determining what remedies are, all Section 1983 says is action at law, suit inequity or other proper proceeding for redress. So you have to look to this. If we put Exxon to the side and we put a one-to-one ratio and Admiralty aside and we're looking to the common law as of the enactment of the statute, what is your argument as to what that common law would be? What would the limit be and what are the cases that we would be looking at? That's, I think, what we're saying we don't seem to have before us. Presumptively, it couldn't be more than one-to-one, but I think it's clear it couldn't be more than four-to-one because when the Supreme Court surveyed all the different punitive damage jurisdictions, the highest they looked to, I think, that they took note of was quadruple. So if you were to say that- If you were to look at Exxon as a guide, I don't think you could go more than a four-to-one ratio under federal common law. This case is not governed by Browning-Ferris. This is not a diversity case. State law is not applicable. There are federal common law limits that apply here, and I think that's exactly what Judge Garth recognized in the Bayside. And this court, albeit in an unpublished decision, specifically recognized it by remanding in Bayside, specifically citing Exxon. So I see that I'm out of time. I don't know if the panel has any additional questions. Thank you. Thank you. Both counsel, we will take this case under advisory.